R. J. MARZELLA & ASSOCIATES, P.C.
BY: Charles W. Marsar, Jr., Esquire
Court I.D. No. 26649
3513 North Front Street
Harrisburg, Pennsylvania  17110                           Attorneys for Plaintiffs,
Telephone:     (717) 234-7828                             James Ryan and
Facsimile:      (717) 234-6883                            Megan Ryan

THE UNITED STATES COURT FOR THE DISTRICT OF MARYLAND
CIVIL ACTION – LAW

| | | |
|---|---|---|
| JAMES RYAN, and MEGAN RYAN husband and wife, | : | DOCKET NO.  WMN 02 CV 240 |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| HARFORD MEMORIAL HOSPITAL, INC.; | : | |
| UPPER CHESAPEAKE HEALTH SYSTEM, INC.; | : | |
| MIDATLANTIC CARDIOVASCULAR ASSOCIATES, P.A.; | : | |
| JAY LANG, D.O.; | : | |
| RAKESH MATHUR, M.D.; | : | |
| MARIAN BENNER, M.D.; | : | |
| Defendants | : | JURY TRIAL DEMANDED |

BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO
DEFENDANT HOSPITAL'S MOTION FOR SUMMARY JUDGMENT

I.     **Statement of Facts**

Back in September of 1998, the Ryan family was returning home from a wedding anniversary when they stopped at a rest-stop to refuel.  As Mr. Ryan was cleaning the windshield, he suddenly lost consciousness and fell backwards cracking his head on the concrete.  Mrs. Ryan jumped out of the car and ran to her husband's aid.  At the same time, she yelled to the gas attendant to call 911.

1

Upon reaching her husband, she tried to help him sit up.  When sitting up, Mr. Ryan instantly became nauseous and dizzy.  His face turning ashen gray, Mrs. Ryan placed her hand behind Mr. Ryan's head to lay him back down. In doing so, she noticed not only a lump, but that her husband was bleeding from the back of the head.  Knowing that her husband was in need of emergent medical attention, Mrs. Ryan retrieved a pillow and a gauze pad from the first aid kit in the family's car, placed them behind Mr. Ryan's head and waited for the ambulance.

When the ambulance arrived, the Ryans explained what had happened, and Mr. Ryan was rushed to the hospital with the chief complaint of a head injury.  Although Mrs. Ryan was unable to ride in the ambulance, she followed in the family car to the hospital.  Upon arriving, Mrs. Ryan immediately went to the emergency room to register her husband for emergent care.  Reasonably assuming that the physicians treating her husband were permitted to use the hospital equipment, Mrs. Ryan requested a head CT on several occasions.  In fact, Mrs. Ryan specifically informed the emergency room physician that her husband was anticoagulated on coumadin and that she feared internal bleeding in his head.  Furthermore, Mrs. Ryan's brother-in-law is a cardiologist who spoke with the emergency room physician on the telephone during this time and expressed the same concerns.

All of Mrs. Ryan's requests for a head CT went unfulfilled.   Unfortunately, Mr. Ryan was discharged without ever having a head CT.  Several days later, Mr. Ryan was rushed to another hospital where a head CT revealed a massive internal bleed on his

2

brain. An emergent craniotomy was performed. Unfortunately, the delay in diagnosing and treating the bleed has left Mr. Ryan with permanent cognitive deficits.

Thereafter, the Ryans commenced suit against the physicians at the hospital who failed to timely diagnose and treat Mr. Ryan's head injury and the hospital for vicarious liability.

### II. Question Presented

IS THERE A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER THE RYANS REASONABLY BELIEVED THE DEFENDANT-PHYSICIANS WERE AGENTS OF THE DEFENDANT-HOSPITAL WHEN THEY SOUGHT EMERGENT MEDICAL TREATMENT FROM THE DEFENDANT-HOSPITAL?

*Suggested answer in the affirmative.*

### III. Standard of Review

It is well established that a court may grant a motion for summary judgment only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Gill v. Rollins Protective Servs. Co., 773 F.2d 592, 595 (4th Cir.1985); Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950); Morrison v. Nissan Motor Co., 601 F.2d 139, 141 (4th Cir.1979). A material fact is one that constitutes an element that is essential to a party's case. Celotex v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As the Supreme Court stated in Anderson,

> [T]he substantive law will identify which facts are material.
> Only disputes over facts that might affect the outcome

3

>of the suit under the governing law will properly preclude the entry of summary judgment.
>    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists if the evidence that the parties present to the court is sufficient to indicate the existence of a factual dispute that could be resolved in the non-moving party's favor through trial.  Id.  in a motion for summary judgment, the inferences that the court draws from the facts and evidence presented shall be viewed "in the light most favorable to the party opposing the motion." U.S. v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); see also, Pulliam Investment Co., Inc. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir.1987); see also, Gill v. Rollins Protective Servs. Co., 773 F.2d 592, 595 (4th Cir.1985).

### IV.     Summary of Argument

In order to determine whether an apparent agency exists, Maryland courts have turned to the "justifiable reliance" test.  Applying the test to the facts of our case, the ultimate question is whether the Ryans justifiably relied on an agency relationship between the defendant-physicians and the defendant-hospital at the time they presented to the emergency room.  Such a question is very fact specific and, therefore, requires the analysis of caselaw with very similar fact patterns to the one at hand.  Maryland caselaw has unequivocally held that a plaintiff presenting to an emergency room for emergent treatment is justifiably relying on an agency relationship between the defendant-

4

physicians who provide such treatment and the defendant-hospital where such treatment is provided.  (See, Mehlman v. Powell, 281 Md. 269, 378 A.2d 1121 (1977); also see, Hunt v. Mercy Medical Center, 121 Md.App. 516, 710 A.2d 362 (1998)).

V.  Argument

    A.  THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER THE RYANS REASONABLY BELIEVED THE DEFENDANT-PHYSICIANS WERE AGENTS OF THE DEFENDANT-HOSPITAL, WHEN THEY SOUGHT EMERGENT TREATMENT FROM THE DEFENDANT-HOSPITAL.

It is well-settled that Maryland Courts have adopted the definition of apparent agency as set forth in the Restatement Second of Agency:

> One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill or such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or the agent as if he were such.
>
> B.P. Oil Corp. v. Mabe, 279 Md. 632, 643, 370 A.2d 554 (1977); citing, Restatement 2d of Agency § 267.

The Restatement sets forth the objective test of "justifiable reliance."  In other words, when determining whether an apparent agency exists, the issue is whether the plaintiff "justifiably relied" on such an agency when engaging the apparent agent.  Specifically applied to our case, the issue is whether it was reasonable for the plaintiff to justifiably rely on an agency relationship between the defendant-physicians and the defendant-hospital when deciding to go to the emergency room.

When applying the "justifiable reliance" test, it is imperative to identify the apparent agent and the apparent principal.  Once these parties are identified, the

5

circumstances surrounding their relationship must be examined in order to properly determine whether it was reasonable for the plaintiff to rely on such an apparent agency relationship.  The "justifiable reliance" test is very fact specific; therefore, the caselaw that is controlling in our situation is that involving physicians and hospitals as potential agents and principals.  More specifically, the caselaw on point with our situation is that involving an apparent agency relationship between an emergency room physician and a hospital where a plaintiff is seeking emergent care.

There are four cases published by Maryland Courts that have involved an apparent agency between a physician and a hospital.  Mehlman v. Powell, 281 Md. 269, 378 A.2d 1121 (1977), Hetrick v. Weimer, 67 Md. App. 522, 508 A.2d522 (1986), *rev'd on other grounds*;  Hunt v. Mercy Medical Center, 121 Md.App. 516, 710 A.2d 362 (1998), Jacobs v. Meade Flynn, 131 Md. App. 342, 749 A.2d 174 (2000).  The Moving-Defendant has chosen to rely on Hetrick (which has been over-ruled) and Jacobs.  Neither of which are applicable to the issue at hand.  Neither Hetrick nor Jacobs involved a situation, similar to ours, where the plaintiff presented to a defendant-hospital's emergency room relying on the defendant-physician for emergent care.  On the other hand, Mehlman (Maryland's hallmark apparent agency case) and Hunt are directly on point, as they both involve a plaintiff presenting to the emergency room of a defendant-hospital and relying on a defendant-physician for emergent care.

Mehlman v. Powell, 281 Md. 269, 378 A.2d 1121 (1977), was a medical malpractice action involving a failure to timely diagnose a pulmonary embolism resulting in the plaintiff's death.  Specifically, the plaintiff, was treating with the defendant-

6

specialist for approximately one year due to shortness of breath. Although, the defendant-specialist ran several tests, all were inconclusive. Eventually, the plaintiff woke up one morning unable to get out of bed. He promptly presented to Holy Cross Hospital where the defendant-emergency physician was charged with the plaintiff's care. After running several tests, the defendant-emergency physician discharged the plaintiff without diagnosing his pulmonary embolism. The following day, the plaintiff died due to a pulmonary embolism.

Thereafter, suit was filed on behalf of the plaintiff's estate naming Holy Cross Hospital vicariously liable for the defendant-emergency physician's failure to timely diagnose the plaintiff's pulmonary embolism. The plaintiff contended that an actual agency and/or an apparent agency relationship existed between the defendant-emergency physician and Holy Cross Hospital. The trial court and appellate court both held that, not only did an actual agency relationship exist, but an apparent agency relationship also existed. For purposes of the case at hand, we will focus on the appellate court's analysis of the apparent agency relationship.

In analyzing the apparent agency relationship, the <u>Mehlman</u> Court first addressed the defendant's argument. Focsuing on the "justifiable reliance" test, the defendant argued that there was no evidence, or even any indication, that the plaintiff relied on the existence of an agency relationship between the physician and the hospital. The Court disagreed.

In holding that an apparent agency did exist, the <u>Mehlman</u> Court reasoned that the "justifiable reliance" test is implicitly satisfied when a person presents to an

emergency room for emergent treatment.  <u>Mehlman</u>, 281 Md. at 274 and 275.  Given the fact that a hospital is "engaged in the business of providing health care services," it is only reasonable that a person enters a hospital for no other reason than to obtain health care services.  <u>Id.</u> at 274.  In other words, the <u>Mehlman</u> Court reasoned that logic dictates: a person who enters an emergency room, in search of emergent care, is justifiably relying on the physicians in that hospital to properly diagnose and treat the plaintiff's condition.

The Moving-Defendant attempts to distinguish <u>Mehlman</u> from our case by suggesting that the plaintiff, in <u>Mehlman,</u> specifically chose Holy Cross Hospital, thereby, relying on *Holy Cross Hospital*, as opposed to relying on *a hospital*, in general.  To the contrary, such a distinction is not made by the <u>Mehlman</u> Court.  The <u>Mehlman</u> opinion makes no mention of any evidence suggesting that the plaintiff chose Holy Cross Hospital over another hospital because of the plaintiff's reliance on *Holy Cross Hospital* physicians.  In fact, to the contrary, the <u>Mehlman</u> reasoning can only lead to the conclusion that the specific hospital chosen is irrelevant.  The <u>Mehlman</u> Court clearly accentuated such point when opining:

> The Hospital…is engaged in the business of providing
> health care services.  One enters a hospital for no
> other reason.  <u>Id.</u>

It is clear from this passage that the specific hospital chosen by the plaintiff is irrelevant; rather, a person goes to a hospital when sick or injured for the services of the hospital, regardless of the name of the hospital.

In both our case and in Mehlman, the plaintiffs chose to go to the hospital because they were in need of medical treatment. Neither the Mehlman plaintiff, nor our plaintiff, specifically chose one particular hospital over another when deciding where to go. Other than making the reasonable assumption that a physician would treat them, neither our plaintiff nor the Mehlman plaintiff chose a specific hospital in reliance of the hospital's specific physicians. Mrs. Ryan testified that she yelled for the gas station attendant to call 911. (See Mrs. Ryan's deposition transcript, page 28, lines 6-8, attached hereto as Exhibit "A"). The Ryans were clearly relying on an ambulance to take them to a hospital where they could rely on the hospital's physicians for emergent medical treatment. Our plaintiff and the Mehlman plaintiff both went to a hospital simply in search of emergent medical services. Accordingly, the Mehlman case is directly on point with our case.

More recently, the Court of Special Appeals of Maryland relied on Mehlman to find an apparent agency in Hunt v. Mercy Medical Center, 121 Md.App. 516, 710 A.2d 362 (1998). Hunt involved a 78 year old gentleman who was misdiagnosed as suffering from prostate cancer when, in fact, he was not. The plaintiff underwent 15 separate radiation treatments before the misdiagnosis was discovered. Thereafter, the plaintiff filed suit against the defendant-pathologist for misreading his biopsies. Under the theory of vicarious liability, he also sued the defendant-hospital where the biopsies were misread.

Applying the "justifiable reliance" test of apparent agency, the Hunt court agreed with the view of the Mehlman court that when a person seeks medical treatment at a

9

hospital, common sense implies that the person is relying on the physicians at that hospital.  Id.  To illustrate the rationale behind such implicit "justifiable reliance," Hunt quoted Stanhope v. Los Angeles College of Chiropractic, 54 Cal.App.2d 141, 128 P.2d 705, 708 (1942):

> [I]t cannot seriously be contended that respondent, when he was being carried from room to room… should have inquired whether the individual doctors who examined him were employees…or were independent contractors.  Id.

The Hunt court ruled that the defendant-hospital "held itself out to the public offering and rendering hospital services, and [the plaintiff] relied on [the defendant-hospital] to conduct a biopsy."  Hunt, 121 Md.App. at 547.  Such reliance was held reasonable because the defendant-hospital "undertook to provide this biopsy and to furnish the required doctors and staff for a charge."  Id.

Similarly, in our case, Mr. Ryan was taken to defendant-hospital with the justifiable reliance that the defendant-hospital had a relationship with competent defendant-physicians who were going to properly diagnose and treat his head injury. Both the hospital in Hunt and the hospital in our case held themselves out to the public as offering and rendering hospital services.  In Hunt, the fact that the hospital had a pathology department reasonably led the plaintiff to believe that they were capable of analyzing a biopsy.  In our case, the fact that the hospital had an emergency department, reasonably led the plaintiff to believe that they were capable of properly diagnosing trauma patients.  Just as the plaintiff in Hunt was sent to Mercy hospital for a biopsy, the

10

plaintiff in our case was sent to the hospital for diagnosis and treatment of his head injury.  (See Ambulance Record indicating chief complaint as "head injury," attached hereto as Exhibit "B").  The <u>Hunt</u> court held, "[h]aving undertaken to provide this service, Mercy was under a duty to do so effectively….[and, the plaintiff] could properly assume that the doctors and staff of [the hospital] were acting on behalf of [the hospital]"  <u>Hunt</u>, 121 Md.App. at 547 and 548.  Accordingly, in our case, given the fact that the hospital had undertaken to provide emergent services, Mr. Ryan could properly assume that the doctors who treated him at such time were acting on behalf of the hospital.

      The moving-defendant relies on <u>Hetrick v. Weimer</u>, 67 Md. App. 522, 508 A.2d 522 (1986) to argue no apparent agency exists in our case.  <u>Hetrick</u> involved a woman who was in her 31st or 32nd week of pregnancy.  Due to nausea, vomiting, and abdominal pain, she was admitted to the hospital.  Several obstetricians initially diagnosed her with gastroenteritis.  Nearly a week later, exploratory surgery revealed that she had been suffering from preeclampsia.  At the time, the most common treatment of preeclampsia was to deliver the child.  Although delivery was completely unexpected at the time the plaintiff presented to the hospital, she had no option but to undergo a caesaren section to deliver her child nearly 9 weeks early.

      Once born the child was in very poor condition.  A pediatrician was called in to assess the child.  The pediatrician attempted to improve the baby's cardiopulmonary responses and blood sugar level, unfortunately to no avail.  After several hours, the pediatrician called in a specialist, but by then it was too late.  The baby died.

The plaintiffs subsequent filed suit pursuing two separate and distinct theories: (1) the defendant-obstetrians' failure to timely diagnose a pregnant mother's preeclampsia, and (2) the defendant-pediatrician's failure to properly treat a premature infant's cardiopulmonary insufficiencies.  The plaintiff also sued the hospital alleging vicarious liability based upon an apparent agency relationship between the defendant-physicians and the defendant-hospital.

Prior to trial, the obstetricians were released from the suit.  Accordingly, the first theory of liability was abandoned.  The case went to trial against the defendant-pediatrician for failure to properly treat the infant's cardiopulmonary insufficiencies.  At the close of evidence, the defendant-hospital moved for a directed verdict on the grounds that the defendant-pediatrician was not an apparent agent of the defendant-hospital.  With the release of the obstetricians, the question became whether there was an apparent agency relationship between the defendant-pediatrician and the defendant-hospital.  The court held that a jury would not be able to find an agency relationship between the defendant-pediatrician and the defendant-hospital.  The court granted the defendant-hospital's motion.

The Hetrick court reasoned that the "justifiable reliance" test could not have been satisfied.  In its explanation, the court opined that the plaintiff did not initially go to the hospital seeking *pediatric* medical services; rather, the plaintiff went to the hospital for her own medical attention.  Hetrick, 67 Md.App. at 534 (emphasis added).

> Mrs. Hetrick did not go to Anne Arundel General
> hospital to seek the services of a pediatrician,
> and there were no surrounding circumstances to

12

indicate that the hospital was supplying pediatric services.

Hetrick, 67 Md.App. at 534.

In other words, the Court held that since the plaintiff did not appear to be relying on the pediatric medical services of the hospital upon initial presentation, the pediatrician was not the apparent agent of the hospital. It can be reasonably inferred from such reasoning that the court would have allowed the jury to decide whether an apparent agency relationship existed between the defendant-obstetricians and the defendant-hospital. Such an apparent agency most likely did exist given the fact that the defendant-obstetricians treatment was more directly related to the type of care the plaintiff was relying on at the time she initially presented to the emergency room.

The theory of liability in our case (i.e. failure to timely diagnose a subdural hematoma) is more akin to Hetrick's theory against the defendant-obstetricians (i.e. failure to timely diagnose preeclampsia), than it is to Hetrick's theory against the defendant-pediatrician (i.e. failure to properly treat an newborn's cardiopulmonary deficiencies). In our case, Mr. Ryan went to the emergency room with the chief complaint of a head injury. Upon presentation to the defendant-hospital, Mr. Ryan was justifiably relying on the defendant-physicians to properly diagnose and treat his head injury, just as the plaintiff in Hetrick was justifiably relying on the defendant-obstetricians to properly diagnose her preeclampsia. Accordingly, the facts of our case suggest that an apparent agency between the defendant-physicians and the defendant-hospital did exist.

13

In addition, the Hetrick court distinguished it's opinion from Mehlam by specifically detailing the type of medical services sought by the plaintiff when initially presenting to the hospital.  The plaintiff in Mehlam presented to the hospital for medical services that he believed the hospital and it's physicians were capable of performing (i.e. the proper diagnosis of his pulmonary embolism).  Whereas, in Hetrick, the plaintiff presented to the hospital for medical services to deal with personal complaints never contemplating that her unborn infant would require emergent prenatal care.  The Hetrick court utilized this distinction to reason that in order for a plaintiff to reasonably believe that an agency relationship exists between a physician and a hospital, there must be some correlation between the services sought by the plaintiff and those that appear to be offered by the hospital.

> As the [Mehlman] Court explained, "[A]ll appearances [in Mehlman] suggest[ed] and all ordinary expectations [were] that the Hospital emergency room, physically a part of the Hospital, was in fact an integral part of the institution."  In short, Holy Cross Hospital held out the emergency room and its personnel as a part of the Hospital.
> Hetrick, 67 Md.App. at 528; citing, Mehlman v. Powell, 281 Md. 269, 378 A.2d 1121 (1977).

Accordingly, it appeared reasonable for the plaintiff in Mehlman to rely on the hospital's emergency department to provide care by competent emergency physicians.  As opposed to the plaintiff in Hetrick, who could not have been reasonably relying on pediatric services at the time she presented to the hospital's emergency department.

Our case falls in line with Mehlman rather than with Hetrick.  In our case, the plaintiff, Mr. Ryan, had fallen and hit his head.  He was transported to the hospital with a

14

chief complaint of a head injury.  Mr. Ryan was obviously relying on the emergent services of the defendant-hospital to properly diagnose and treat his head injury.  Mrs. Ryan specifically asked the defendant-physicians to perform a head CT several times.  (See Mrs. Ryan's deposition transcript page 39, lines 1-13; page 94, lines 1-3, attached hereto as Exhibit "C").  The hospital was capable of performing a head CT, and each defendant-physician was capable of ordering one.  (See Defendant Benner's deposition transcript page 75, lines 2-23, attached hereto as Exhibit "D;" see Defendant Mathur's deposition transcript page 68, lines 5-23, attached hereto as Exhibit "E;" see Defendant Lang's deposition transcript page 53, lines 16-23, attached hereto as Exhibit "F").  The plaintiffs in our case were clearly relying on the defendant-physicians relationship with the defendant-hospital to utilize hospital resources in properly diagnosing and treating Mr. Ryan's head injury.  Unlike the birth of a baby and subsequent pediatric care in Hetrick, there was no care in our case that was so unrelated to Mr. Ryan's initial presentation to the defendant-hospital that it would not pass the "justifiable reliance" test.

 The Moving-Defendant also relies on Jacobs v. Flynn, 131 Md.App. 342, 749 A.2d 174 (2000) to support their contention that the Ryans cannot prove that the hospital misled them into believing an agency relationship existed between the defendant-hospital and defendant-physicians.  As illustrated previously, the fact that the defendant-hospital was engaged in the business of providing health care services, coupled with the fact that the defendant-hospital held themselves out as providing emergency medical treatment by having an emergency room that accepted trauma patients, is sufficient to

15

misled a plaintiff into reasonably believing that there is an agency relationship between the hospital and their physicians.  (See, Mehlman v. Powell, 281 Md. 269, 378 A.2d 1121 (1977); also see, Hunt v. Mercy Medical Center, 121 Md.App. 516, 710 A.2d 362 (1998)).

      Mrs. Ryan testified that at the time of the injury she instructed a bystander to call 911.  (See Exhibit "A").  The Ryans were obviously in search of emergent medical care.  Upon arriving at the hospital, Mrs. Ryan testified that she immediately presented to the Emergency Room to register.  (See Mrs. Ryan's deposition transcript, page 33, lines 9-12, attached hereto as Exhibit "G").  Such registration is a clear indication that the Ryans were relying on the hospital's physicians to provide emergent medical care.  Furthermore, Mrs. Ryan testified that she specifically spoke with the physicians treating her husband and requested treatment for her husband's head (See Exhibit "C").  Such testimony is clear evidence of the plaintiffs' reliance on the physicians in the hospital to provide adequate care.  Furthermore, Mrs. Ryan testified that it was her understanding that most physicians are employees of the hospitals where they work.  (See Mrs. Ryan's deposition transcript, page 129, lines 6-8, attached hereto as Exhibit "H").  In fact, Mrs. Ryan's testimony regarding the person who tested her husband's defibrillator while in defendant-hospital is evidence of her belief that the defendant-physicians were employees of the defendant-hospital:

> Q:    Did you have any other discussions with the doctor who interrogated the defibrillator?
>
> A:    I don't think it was a doctor, ma'am.  I think It was a woman from --
>
> Q:    A technician or something?

16

> A: I think it was somebody from Matronics, the company that makes it. She was definitely not somebody who worked at the hospital. I think she came from outside and brought her equipment and stuff with her.
> (See Mrs. Ryan's deposition transcript page 52, lines 4-14, attached hereto as Exhibit "I").

Mrs. Ryan's testimony reveals that she obviously believed that the defendant-physicians were either employees of the hospital or so closely related thereto that an apparent agency relationship existed.

Most noteworthy of <u>Jacobs</u> is the fact that the trial court was compelled to allow the jury to apply the "justifiable reliance" test to the facts and decide whether it was reasonable for the plaintiff to rely on an agency relationship between the hospital and the physicians. This is an important point because the question of whether it is reasonable for a person to believe that an apparent agency relationship exists is one of fact; therefore, such a question is most properly answered by a jury. <u>Medical Mutual Liability Insurance Society of Maryland v. Mutual Fire, Marine and Inland Insurance Company</u>, 37 Md.App. 706, 379 A.2d 739, <u>citing</u>, <u>P. Flanigan & Sons v. Childs</u>, 251 Md. 646, 248 A.2d 473 (1967). Accordingly, there are sufficient facts in our case to suggest that an apparent agency relationship existed between the defendant-physicians and the defendant-hospital; therefore, the issue presented before this Honorable Court should be submitted to the jury.

VI. Conclusion

The evidence suggests that, at the time the Ryans presented to the defendant-hospital's emergency room, they were justifiably relying on the defendant-physicians' relationship with the defendant-hospital for a proper diagnosis and treatment of Mr. Ryan's head injury. Accordingly, the question of whether an apparent agency between the defendant-physicians and the defendant-hospital should properly be submitted to the jury.

                                            R. J. Marzella & Associates, P.C.


                                      By: /S/ Charles W. Marsar, Jr., Esquire
                                           Charles W. Marsar, Jr., Esquire
                                           Attorney Identification No. 26649

Dated: January 16, 2004

## CERTIFICATE OF SERVICE

I, Charles W. Marsar, Jr., hereby certify that a true and correct copy of this foregoing document was served upon all counsel of record this <u>16th</u> day of January, 2004, by way of electronic filing and United States postal service to the address as follows:

Teri Kaufman Leonovich, Esq.
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street, 20th Floor
Baltimore, MD 21202
Counsel for Defendants Harford Memorial Hospital, Inc. and
Upper Chesapeake Health Systems

Mary Alane Downs, Esq.
MORGAN SHELSBY CARLO DOWNS & EVERTON
4 North Park Drive Suite 404
Hunt Valley, MD 21030-1876
Counsel for Defendants Midatlantic Cardiovascular Associates, P.A., and
Jay Lang, D.O.

Barbara L. Ayers, Esquire
Whiteford, Taylor, & Preston L.L.P.
210 West Pennsylvania Ave.
Towson, MD 21204-4515
Counsel for Defendant Rakesh Mathur, M.D.

Pamela Diedrich, Esquire
MASON, KETTERMAN & CAWOOD, P.A.
69 Franklin Street
Annapolis, MD 21401
Counsel for Defendant Marian Benner, M.D.

**R.J. Marzella & Associates, P.C.**

By: /S/ Charles W. Marsar, Jr., Esquire
Charles W. Marsar, Jr., Esquire